ORIGINAL

FILED IN OPEN COURT
U.S.D.C. Atlanta

MAY 25 2022

Kevin P. Weimer, Clerk
By: Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>ENVISTACOM, LLC,<br>ALAN CARSON,<br>VALERIE HAYES, AND<br>PHILIP FLORES | Criminal Indictment<br><br>No. 1 22-CR-197 |

THE GRAND JURY CHARGES THAT:

At all times relevant to this Indictment, unless otherwise stated:

**COUNT ONE**
**Conspiracy**
**18 U.S.C. § 371**

1. Beginning on a date unknown, but no later than in or about September 2014 and continuing to at least in or about November 2016, in the Northern District of Georgia and elsewhere, the defendants ENVISTACOM, LLC, ALAN CARSON, VALERIE HAYES, and PHILIP FLORES, and others known and unknown to the Grand Jury did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding to (A) defraud the United States by obtaining money from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises; and (B) execute and attempt to execute a scheme and artifice to defraud the United States and to obtain money and property from the United States, and agencies thereof, by means of false and fraudulent pretenses, representations, and promises in the procurement of property

and services as a prime contractor and a subcontractor with the United States, where the value of the contract for such property and services was $1,000,000 or more, in violation of Title 18, United States Code, Section 1031.

## BACKGROUND

2. The Small Business Administration ("SBA") was an agency of the United States. The SBA was authorized by law to develop programs and promulgate regulations to assist small businesses, including by having programs that offer contracts set aside for certain business owners, such as small businesses owned and controlled by service disabled veterans and socially and economically disadvantaged individuals, commonly referred to as "set-aside" programs and "set-aside" contracts.

3. The SBA's 8(a) Business Development program was among such "set-aside" programs that offer "set-aside" contracts.

4. The SBA's 8(a) program's purpose was to increase the number of government contracts awarded to small businesses owned and controlled by socially and economically disadvantaged individuals. Before a company could participate in the 8(a) program, the company had to be certified by the SBA.

5. To qualify as a certified 8(a), a company, among other things, was required to qualify under SBA rules as a "small business" at least 51% owned and controlled by U.S. citizens who were socially or economically disadvantaged. Once certified, 8(a) program participants were able to receive federal contracting preferences and receive training and technical assistance designed to strengthen their ability to compete effectively in the American economy.

6. The 8(a) certification qualified a business, among other things, as eligible to compete for the program's sole-source and competitive set-aside contracts and pursue opportunities for mentorship from experienced and technically capable firms through the SBA Mentor-Protégé program.

7. The government authorized sole-source contracts to 8(a) participants for up to $7.5 million for manufacturing acquisitions and $4.5 million for all other acquisitions.

8. Participants in the 8(a) program were responsible for maintaining continuing eligibility in the program. Each program participant was required to certify, on an annual basis, that it met statutory and regulatory requirements. As part of an annual review, each participant was required annually to submit specific information to their servicing SBA District Office.

9. It was the province and responsibility of federal government employees, often the Contracting Officer's Representative ("COR") or Program Manager ("PM"), to prepare procurement-related documents, such as Requests for Proposal ("RFPs"), Statements of Work ("SOWs"), Performance Work Statements ("PWSs"), and Independent Government Cost Estimates ("IGCEs").

10. Before the award of any federal government contract, including contracts awarded through the 8(a) program's sole-source mechanism, the Contracting Officer was required to make a determination that the proposed pricing was fair and reasonable. The Contracting Officer determined this, at least in part, through the IGCE, which was meant to provide the Contracting Officer with an independent basis to determine the fair and reasonable price for the contract. The IGCE was meant to be an independent government estimate, separate and distinct from contractor and subcontractor price quotes.

11. On or about June 8, 2015, HHS Contract HHSP233201550029A ("HHS Contract 1") was awarded to Co-Conspirator A for $829,618.50 as an 8(a) sole-source firm fixed-price contract with a period of performance from on or about June 8, 2015 to June 7, 2016.

12. Co-Conspirator A paid ENVISTACOM approximately $735,000 as subcontractor and/or vendor under HHS Contract 1 out of the approximately $829,618.50 paid by the U.S. government to Co-Conspirator A.

13. On or about September 25, 2015, HHS Contract HHSP233201500313A ("HHS Contract 2") was awarded to Co-Conspirator A for $3,515,987.72 as an 8(a) sole-source firm fixed-price contract with a period of performance from on or about September 22, 2015 to September 21, 2016.

14. Co-Conspirator A paid ENVISTACOM approximately $2.7 million as subcontractor under HHS Contract 2 out of the approximately $3,515,987.72 paid by the U.S. government to Co-Conspirator A.

15. On or about September 28, 2015, HHS Contract HHSP233201500338A ("HHS Contract 3") was awarded to Co-Conspirator A for $3,542,270.10 as an 8(a) sole-source firm fixed-price contract with a period of performance from on or about September 28, 2015 until September 27, 2016.

16. Co-Conspirator A paid ENVISTACOM approximately $3.2 million as subcontractor under HHS Contract 3 out of the approximately $3,542,270.10 paid by the U.S. government to Co-Conspirator A.

**DEFENDANTS AND CO-CONSPIRATORS**

17. ENVISTACOM, LLC was a limited liability corporation with its principal place of business in the Northern District of Georgia.

18. ALAN CARSON was the Vice President of ENVISTACOM and resided in Atlanta, Georgia.

19. VALERIE HAYES was the Vice President of Special Programs at ENVISTACOM and resided in Callaway, Maryland.

20. PHILIP FLORES was the owner and founder of Co-Conspirator A and resided in Virginia.

21. Co-Conspirator A was a Virginia corporation with its principal place of business in Fredericksburg, Virginia.

22. Co-Conspirator B was a corporation originally incorporated in Maryland and then in Virginia.

23. Co-Conspirator C was a Virginia company owned by an ENVISTACOM employee.

24. Co-Conspirator D was a Florida corporation with its principal place of business in Florida.

25. Co-Conspirator E was a U.S. government employee who resided in Mechanicsville, Maryland.

26. Co-Conspirator F was an ENVISTACOM employee.

## MANNER AND MEANS

27. For the purpose of carrying out the charged conspiracy, ENVISTACOM, CARSON, HAYES, and FLORES, and others known and unknown to the Grand Jury:

    a. Identified U.S. government procurements that could be awarded as sole-source set-aside contracts under SBA's 8(a) program;

b. Sought the award of sole-source set-aside 8(a) contracts from the federal government through proposals submitted by Co-Conspirator A and FLORES;

c. Coordinated in preparing IGCEs for those 8(a) sole-source government contract procurements to ensure that Co-Conspirator A's proposal pricing would be lower than the IGCEs;

d. Coordinated in preparing and procuring purported "competitive quotes" from Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D, which were sham quotes that were intentionally higher than Co-Conspirator A's proposal prices and/or ENVISTACOM'S price quotes, to ensure the sole-source awards;

e. Concealed that FLORES' wife owned Co-Conspirator B, and that FLORES prepared Co-Conspirator B's sham quotes for the 8(a) sole-source awards to Co-Conspirator A;

f. Concealed that ENVISTACOM sought and procured the purported "competitive quotes" from Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D;

g. Concealed that ENVISTACOM, CARSON, HAYES, and FLORES prepared the IGCEs and other contract procurement documents for the 8(a) sole-source awards to Co-Conspirator A;

h. Made false statements, representations, and material omissions to federal government contracting officials regarding (i) the IGCEs being legitimate independent government cost estimates; and (ii) Co-Conspirator B, Co-Conspirator C, and Co-Conspirator D quotes being "competitive," when

they were either prepared by FLORES in consultation with HAYES or the pricing therein was directed by CARSON.

## OVERT ACTS

28. While in the Northern District of Georgia and elsewhere, in furtherance of the conspiracy, and in order to carry out the objects thereof, ENVISTACOM, CARSON, HAYES, FLORES, and other co-conspirators known and unknown to the Grand Jury committed or caused the following overt acts, among others:

   a. On or about March 5, 2015, CARSON, HAYES, and FLORES coordinated via email regarding ENVISTACOM, Co-Conspirator A, and IGCE pricing;

   b. On or about March 11, 2015, CARSON communicated via email with Co-Conspirator C and Co-Conspirator D and requested quotes with specific pricing to support the government's price reasonableness determination;

   c. On or about March 31, 2015, HAYES emailed Co-Conspirator E that "of course" the government cost (IGCE) "will be higher than what [FLORES] bids."

   d. On or about April 20, 2015, HAYES emailed Co-Conspirator E three purported "competitive quotes" to support the government's price reasonableness determination for HHS Contract 1, and instructed Co-Conspirator E to "save over the files before sending" them to the Contracting Officer.

   e. On or about May 27, 2015, HAYES communicated with FLORES and CARSON via email, notifying FLORES that CARSON would provide "at least one competitor quote" so that FLORES would have it "to support due diligence and cost reasonableness" for HHS Contract 1.

    f. On or about August 9, 2015, HAYES emailed Co-Conspirator F and CARSON, requesting an "updated PWS, corresponding IGCE and the RFP verbiage" so that she could "brief" FLORES and "ensure he understands" how ENVISTACOM "desire[s] to proceed."

    g. On or about August 10, 2015, FLORES emailed HAYES a Co-Conspirator B quote that he said was "directly comparable, but higher than [Co-Conspirator E's] IGCE."

    h. On or about August 10, 2015, HAYES emailed Co-Conspirator E with the "HHS Package" for HHS Contract 2, for Co-Conspirator E to provide to the Contracting Officer, including the "PWS, IGCE, competitive quotes, and draft RFP." HAYES noted that she "spoke with PHIL [FLORES] and he is fine with this effort" and directed Co-Conspirator E to "save over the files before sending" to the Contracting Officer.

    i. On or about August 11, 2015, HAYES emailed CARSON a purported "competitive quote" from Co-Conspirator B for HHS Contract 3; and

    j. On or about October 25, 2016, ENVISTACOM deposited the check from Co-Conspirator A to ENVISTACOM/Action Capital for $402,533.67, for payment of ENVISTACOM invoices 1884 (HHS Contract 2) and 1885 (HHS Contract 3) into ENVISTACOM's Wells Fargo bank account controlled by Action Capital.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### Major Fraud Against the United States
### 18 U.S.C. § 1031
### 18 U.S.C. § 2

29. The factual allegations of Paragraphs 2–28, and all sub-parts thereof, are realleged and incorporated by reference into this Count.

30. On or about September 25, 2015, the United States, in a procurement of property and services, awarded HHSP233201500313A (HHS Contract 2) to Co-Conspirator A, the value of which was in excess of $1,000,000.00.

31. ENVISTACOM was a subcontractor to Co-Conspirator A on HHSP233201500313A (HHS Contract 2), with a subcontract value in excess of $1,000,000.00.

32. Beginning in or about September 2014, and continuing up to at least September 2015, in the Northern District of Georgia and elsewhere, in connection with the foregoing procurements, the defendants ENVISTACOM, LLC, ALAN CARSON, VALERIE HAYES, and PHILIP FLORES, aided, abetted, and assisted by each other and by others known and unknown to the Grand Jury, devised a scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact.

33. It was part of the scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact, that ENVISTACOM, CARSON, HAYES, and FLORES would and did the acts described in paragraphs 27 and 28, to wit:

    a. Concealing that the Independent Government Cost Estimates (IGCEs) and other contract procurement documents were prepared by ENVISTACOM and Co-Conspirator A; and

    b. Falsely representing that quotes used to support the IGCEs and Co-Conspirator A's proposal pricing were "competitive" quotes, when they were prepared by FLORES, Co-Conspirator C, or Co-Conspirator D in coordination with HAYES and CARSON, and FLORES', CARSON's, and HAYES' involvement was concealed.

34. Beginning in or about September 2014, and continuing up to at least September 2015, in the Northern District of Georgia and elsewhere, in connection with the foregoing procurements, the defendants ENVISTACOM, LLC, ALAN CARSON, VALERIE HAYES, and PHILIP FLORES did knowingly execute and attempt to execute the scheme and artifice with the intent to defraud the United States and to obtain money by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact in that the defendants committed and caused to be committed the following acts, and in doing so caused a gross loss to the government and a gross gain to ENVISTACOM of greater than $500,000, by preparing and submitting false and fraudulent documents in connection with HHS Contract 2, including false and fraudulent price quotes and IGCEs.

All in violation of Title 18, United States Code, Section 1031 and Section 2.

## COUNT THREE
### Major Fraud Against the United States
### 18 U.S.C. § 1031
### 18 U.S.C. § 2

35. The factual allegations of Paragraphs 2 – 28, 30 – 34 and all sub-parts thereof, are realleged and incorporated by reference into this Count.

36. On or about September 28, 2015, the United States, in a procurement of property and services, awarded HHS Contract HHSP233201500338A (HHS Contract 3) to Co-Conspirator A, the value of which was in excess of $1,000,000.00.

37. ENVISTACOM was a subcontractor to Co-Conspirator A on HHSP233201500338A (HHS Contract 3), with a subcontract value in excess of $1,000,000.00.

38. Beginning in or about September 2014, and continuing up to at least September 2015, in the Northern District of Georgia and elsewhere, in connection with the foregoing procurements, the defendants ENVISTACOM LLC, ALAN CARSON, VALERIE HAYES, and PHILIP FLORES, aided, abetted, and assisted by each other and by others known and unknown to the Grand Jury, devised a scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact.

39. It was part of the scheme and artifice to defraud the United States and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact, that ENVISTACOM, CARSON, HAYES, and FLORES would and did the acts described in paragraphs 27 and 28, to wit:

   a. Concealing that the Independent Government Cost Estimates (IGCEs) and other contract procurement documents were prepared by ENVISTACOM and Co-Conspirator A; and

   b. Falsely representing that quotes used to support the IGCEs and Co-Conspirator A's proposal pricing were "competitive" quotes, when they were prepared by FLORES, Co-Conspirator C, or Co-Conspirator D in consultation with HAYES and CARSON, and FLORES', CARSON'S, and HAYES' involvement was concealed.

40. Beginning in or about September 2014, and continuing up to at least September 2015, in the Northern District of Georgia and elsewhere, the defendants ENVISTACOM LLC, ALAN CARSON, VALERIE HAYES, and PHILIP FLORES did knowingly execute and attempt to execute the scheme and artifice with the intent to defraud the United States and to obtain money by means of false and fraudulent pretenses, representations, and promises, as well as omissions of material fact in that the defendants committed and caused to be committed the following acts, and in doing so caused a gross loss to the government and a gross gain to ENVISTACOM of greater than $500,000, by preparing and submitting false and fraudulent documents in connection with HHS Contract 3, including false and fraudulent price quotes and IGCEs.

All in violation of Title 18, United States Code, Section 1031 and Section 2.

## FORFEITURE

41. Upon conviction of one or more of the offenses alleged in Counts One through Three of this Indictment, defendants ENVISTACOM LLC, ALAN CARSON, VALERIE HAYES, and PHILIP FLORES shall forfeit to the United States,

pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to such offenses, including but not limited to, the following:

    a. MONEY JUDGMENT: A sum of money in United States currency representing the amount of proceeds obtained as a result of each offense, or conspiracy to commit such offense, for which the defendant is convicted. If more than one defendant is convicted of an offense, the defendants convicted are jointly and severally liable.

42. If, as a result of any act or omission of defendants ENVISTACOM, CARSON, HAYES, or FLORES, any of the above-described property subject to forfeiture cannot be located upon the exercise of due diligence; has been transferred to, sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property, which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18 United States Code, Section 982(b), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

A ____True____ BILL

_____
FOREPERSON

13

RYAN K. BUCHANAN
United States Attorney

*/s/ Christopher J. Huber*

CHRISTOPHER J. HUBER
Assistant United States Attorney
Georgia Bar No. 545627

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181

JONATHAN S. KANTER
Assistant Attorney General
Antitrust Division
U.S. Department of Justice

MARVIN N. PRICE
Director of Criminal Enforcement
Antitrust Division
U.S. Department of Justice

RICHARD A. POWERS
Deputy Assistant Attorney General
Antitrust Division
U.S. Department of Justice

JAMES J. FREDRICKS
Chief, Washington Criminal II Section
Antitrust Division
U.S. Department of Justice

BRITTANY E. MCCLURE
Trial Attorney
Antitrust Division
U.S. Department of Justice